FILED
2021 May-11 PM 03:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit "1"



AlaFile E-Notice

01-CV-2021-900764.00

To: ROBERT RYAN DAUGHERTY
rdaugherty@sirote.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

BOMASADA BIRMINGHAM METROPOLITIAN, LLC V. LORD AECK SARGENT, A KATERRA
01-CV-2021-900764.00

The following complaint was FILED on 3/10/2021 10:45:49 AM

Notice Date:    3/10/2021 10:45:49 AM

JACQUELINE ANDERSON SMITH
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
jackie.smith@alacourt.gov

ELECTRONICALLY FILED
3/10/2021 10:45 AM
01-CV-2021-900764.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
JACQUELINE ANDERSON SMITH, CLERK

| State of Alabama<br>Unified Judicial System<br>Form ARCiv-93   Rev. 9/18 | **COVER SHEET**<br>**CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | Case Number: 01-<br>Date of Filing: 03/10/2021   Judge Code: |
|---|---|---|

## GENERAL INFORMATION

**IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA**
**BOMASADA BIRMINGHAM METROPOLITIAN, LLC v. LORD AECK SARGENT, A KATERRA CO. PLLC**

**First Plaintiff:** ☑ Business   ☐ Individual     **First Defendant:** ☑ Business   ☐ Individual
                    ☐ Government ☐ Other                                ☐ Government ☐ Other

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) that best characterizes your action:

**TORTS: PERSONAL INJURY**
- ☐ WDEA - Wrongful Death
- ☐ TONG - Negligence: General
- ☐ TOMV - Negligence: Motor Vehicle
- ☐ TOWA - Wantonness
- ☐ TOPL - Product Liability/AEMLD
- ☐ TOMM - Malpractice-Medical
- ☐ TOLM - Malpractice-Legal
- ☐ TOOM - Malpractice-Other
- ☐ TBFM - Fraud/Bad Faith/Misrepresentation
- ☐ TOXX - Other: _____

**TORTS: PERSONAL INJURY**
- ☐ TOPE - Personal Property
- ☐ TORE - Real Properly

**OTHER CIVIL FILINGS**
- ☐ ABAN - Abandoned Automobile
- ☐ ACCT - Account & Nonmortgage
- ☐ APAA - Administrative Agency Appeal
- ☐ ADPA - Administrative Procedure Act
- ☐ ANPS - Adults in Need of Protective Service

**OTHER CIVIL FILINGS (cont'd)**
- ☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT - Civil Rights
- ☐ COND - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP - Contempt of Court
- ☑ CONT - Contract/Ejectment/Writ of Seizure
- ☐ TOCN - Conversion
- ☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/Injunction Election Contest/Quiet Title/Sale For Division
- ☐ CVUD - Eviction Appeal/Unlawful Detainer
- ☐ FORJ - Foreign Judgment
- ☐ FORF - Fruits of Crime Forfeiture
- ☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB - Protection From Abuse
- ☐ EPFA - Elder Protection From Abuse
- ☐ QTLB - Quiet Title Land Bank
- ☐ FELA - Railroad/Seaman (FELA)
- ☐ RPRO - Real Property
- ☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP - Workers' Compensation
- ☐ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN:**   F ☑ INITIAL FILING        A ☐ APPEAL FROM DISTRICT COURT        O ☐ OTHER
             R ☐ REMANDED               T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?** ☐ YES ☑ NO   Note: Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

**RELIEF REQUESTED:** ☑ MONETARY AWARD REQUESTED   ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:** DAU008        3/10/2021 10:45:16 AM        /s/ ROBERT RYAN DAUGHERTY
                                 Date                          Signature of Attorney/Party filing this form

**MEDIATION REQUESTED:** ☐ YES ☑ NO ☐ UNDECIDED

**Election to Proceed under the Alabama Rules for Expedited Civil Actions:** ☐ YES ☑ NO

DOCUMENT 2
Case 2:21-cv-00661-AMM   Document 1-1   Filed 05/11/21   Page 4 of 14            ELECTRONICALLY FILED
                                                                                  3/10/2021 10:45 AM
                                                                                  01-CV-2021-900764.00
                                                                                  CIRCUIT COURT OF
                                                                                  JEFFERSON COUNTY, ALABAMA
                                                                                  JACQUELINE ANDERSON SMITH, CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
## BIRMINGHAM DIVISION

| | |
|---|---|
| **BOMASADA BIRMINGHAM METROPOLITAN, LLC,** ) ) | |
| **PLAINTIFF,** ) ) ) | |
| **V.** ) ) ) | **CASE NO. _____** |
| **LORD AECK SARGENT, A KATERRA COMPANY PLLC,** ) ) ) | |
| **DEFENDANT.** ) ) | |

## COMPLAINT

Plaintiff Bomasada Birmingham Metropolitan, LLC (the "Bomasada") files its Complaint against the Defendant Lord Aeck Sargent, a Katerra company PLLC ("Defendant") and states as follows:

## JURISDICTIONAL AND FACTUAL AVERMENTS

1. Plaintiff Bomasada is a Texas limited liability company doing business in Jefferson County, Alabama.

2. Defendant Lord Aeck Sargent, a Katerra company PLLC is professional limited liability company formed in the State of Washington, qualified to do business in the State of Alabama, and with its principal place of business in California.

3. The real property on which the construction project involved in this case is located is in Jefferson County, Alabama.

**The Contract**

4. Bomasada is a real estate entity formed to construct and operate a multi-family residential project in Birmingham, Alabama (the "Project"). The Project is located at 2900 7th

Avenue South, Birmingham, Alabama.

5. Defendant is an architectural and design firm. Defendant holds itself out to be a top-notch, experienced design firm "providing responsive design, technological expertise and exceptional service in order to provide our clients with the best possible facilities."

6. In June of 2014, Bomasada contracted with Defendant[1] to design the Project. The parties entered into an agreement for multi-family design services (the "Contract"). The Contract also required Defendant to provide pre-design and construction administration services. However, the primary work product associated with the Contract was the preparation of the architectural plans (the "Plans").

7. The Plans are essentially design drawings of every aspect of the Project and are the blueprints that allow the contractors (and all subcontractors) to construct the Project. The Plans are also the documents used by the contractor to allow it to bid out subcontracts to various trades who are entrusted with constructing certain elements of the Project.

8. Defendant charged Bomasada over $750,000. Bomasada paid this amount.

9. Among other things, the Contract states that "the Architect shall perform its services consistent with the professional skill and care ordinarily provided by architects practicing in the same or similar locality under the same or similar circumstances," and the "Architect shall perform its services as expeditiously as is consistent with such professional skill and care and the orderly progress of the Project."

10. During the course of construction of the Project, Bomasada identified certain and numerous errors and omissions and was forced to spend additional dollars to fix Defendant's

---

[1] The Contract identifies Defendant as "Lord, Aeck Sargent, Inc." In June 2018, Lord, Aeck Sargent, Inc. merged with Katerra, PLLC, and is now known as "Lord Aeck Sargent, a Katerra company PLLC."

2

mistakes. This caused Bomasada to spend additional dollars it would not have to spend if Defendant's Plans had been suitable to build the Project.

**Defendant Failed to Perform under the Contract.**

11. The Defendant's performance under the Contract was a disaster.

12. Defendant's Plans were woefully lacking in several material respects and were not drafted with the professional skill and care ordinarily provided by architects in the multi-family discipline. By way of example,

- The Plans show design elements that Bomasada specifically requested be omitted;

- The Plans failed to include many components that are necessary and common in plans for multifamily projects (such as a biddable and buildable window and door schedule);

- The Plans were missing many construction elements necessary for the subcontractors to properly bid out their subcontracts;

- The Plans show a gross lack of detailing to allow the contractor and subcontractors to build the Project. This is reflective of LAS's lack of knowledge in multifamily, wood-framed construction;

- The Plans failed to include many obvious and necessary design components so that the general contractor and subcontractors could build the Project;

- The Plans did not meet the building code requirements in several material respects; and

- The Plans were simply not adequate for the subcontractors to understand their requirements and properly build the Project.

3

13. These errors and omissions proximately caused Bomasada damages for which it now sues.

**Defendant's Response to its Failure to Perform.**

14. Defendant's responsive attitude to Bomasada's concerns about grossly inadequate Plans was shocking. Instead of taking upon itself to fix the issues, Defendant took every opportunity to take advantage of the fact that its poor Plans put Bomasada in a difficult situation. By way of example, Defendant repeatedly asked Bomasada for additional compensation to address its own errors and omissions. Defendant even raised its billable rate to Bomasada for these additional charges. Finally, Defendant charged Bomasada for "additional services" due to the fact that the construction is taking longer than planned, when it was LAS's poor Plans that have caused delays.

15. Defendant also charged Bomasada for construction administration costs. This construction administration was either nonexistent or lacking in oversight and/or more importantly, experience. Bomasada requested that Defendant cease billing its construction administration. In response, Defendant threatened to pull Bomasada's license to use the Plans if Bomasada did not continue to pay Defendant's construction administration. Bomasada was forced to pay some of these expenses under protest.

16. Finally, Defendant's response to Bomasada regarding the hard dollars that Bomasada has been forced to pay is that Defendant's errors and omissions are to be "expected" considering the size of the Project.

**The New Owner Hires Defendant.**

17. On or about August 31, 2018, Bomasada sold the Project to Maxus Metropolitan LLC (the "New Owner"). Prior to the sale, Bomasada clearly communicated to the New Owner

4

regarding the challenges the Project suffered due to Defendant's errors and omissions.

18. Late in 2019, the New Owner hired Defendant to assist it with certain rebuilding efforts after a portion of the Project was destroyed due a fire, which took place in late 2018.

19. On or about April 2020, the New Owner began to raise allegations of construction defects in Phases 1-5 of the Project. Many of these issues were not defects. Other issues related solely to Defendant's inadequate and faulty design (the "Maxus Design Claims").

20. Despite this, the New Owner blames Bomasada (and/or a related construction company Bomasada Birmingham Construction, LLC) for the issues that are allegedly plaguing the Project. Based on these allegations, many of which are design related, the New Owner has sued Bomasada Birmingham Construction, LLC in an arbitration proceeding currently pending in Birmingham, Alabama.

21. Defendant began to issue new "reports" to the New Owner claiming that certain issues related to construction errors when, if fact, if any areas of the Project needed to be fixed, it was based on faulty design. Shockingly, Defendant appears to be convincing the New Owner to expend additional sums of money (which New Owner claims is Bomasada's fault) on issues that Defendant caused (or agreed was satisfactory) in the first place. Defendant's current personnel have also convinced the New Owner to spend additional dollars because they do not even know what was originally designed by their own firm.

22. This wanton and unexplainable conduct by Defendant continues through the date of this Complaint, and adds to Bomasada's indemnity and/or contribution claims raised herein.

**Bomasada's Damages.**

23. Defendant agreed that it would perform its services consistent with the professional skill and care ordinarily provided by architects practicing in the same or similar

5

locality under the same or similar circumstances

24. Defendant did not comply with the Contract.

25. Bomasada experienced increased cost to the Project based on, but not limited to:

- Eliminating design elements from LAS's Plans that it instructed LAS it did not want in the first place.  If LAS had the requisite experience, it would know these design elements were not required;

- Changing the materials called for because they did not meet proper building codes or guidelines;

- Adding required platforms and stairs not identified in the Plans;

- Adding required exterior finish elements not identified in the Plans;

- Delays in production due to defective Plans; and

- Correcting construction that had to be re-done due to the improper call outs and dimension busts on the Plans.

26. Defendant has refused to reimburse any of the expenses incurred by the Bomasada to repair the issues caused by Defendants.

27. Defendant has also incurred damages based on Defendant's recent conduct with the New Owner, of which Bomasada is entitled to contractual and common law indemnity.

## COUNT ONE - BREACH OF CONTRACT

28. Bomasada adopts and incorporates herein by reference as if expressly set forth all the allegations and averments contained in the paragraphs above and further alleges as follows:

29. Under the contractual agreement between Defendant and Bomasada, Defendant has a duty to perform its services consistent with the professional skill and care ordinarily

provided by architects practicing in the same or similar locality under the same or similar circumstances.

30. Bomasada performed by making payments under the Contract and cooperating with Defendant by providing information about the Project when requested.

31. Defendant's gross negligence, incompetence, or misconduct in performing its services under the Contract has proximately caused damage to Bomasada.

32. Bomasada is entitled to recover damages as a result of Defendant's breach of contract.

WHEREFORE, Bomasada demands judgment against the defendant in an amount to be awarded by the trier of fact, including compensatory damages, interest, costs, attorney fees, and such other, further, or necessary relief to which Bomasada may be entitled.

## **COUNT TWO – NEGLIGENCE**

33. Bomasada adopts and incorporates herein by reference as if expressly set forth all the allegations and averments contained in the paragraphs above and further alleges as follows:

34. Defendant has a duty to perform its services consistent with the professional skill and care ordinarily provided by architects practicing in the same or similar locality under the same or similar circumstances.

35. By its deficient work, and substandard construction administration services, Defendant has breached its duty to Bomasada.

36. The errors and omissions committed by Defendant on the Project breached Defendant's duty to Bomasada.

37. The breach of duty by Defendant has proximately caused harm to Bomasada by causing it to incur increased amounts of damages not contemplated by the Contract.

7

38. Bomasada is entitled to recover damages as a result of Defendant's breach of duty.

WHEREFORE, Bomasada demands judgment against the defendant in an amount to be awarded by the trier of fact, including compensatory damages, interest, costs, attorney fees, and such other, further, or necessary relief to which Bomasada may be entitled.

## **COUNT THREE – FRAUDULENT INDUCEMENT TO CONTRACT**

39. Bomasada adopts and incorporates herein by reference as if expressly set forth all the allegations and averments contained in the paragraphs above and further alleges as follows:

40. Defendant had a duty to accurately represent its abilities to provide the requested architectural plans that Bomasada required to construct the Project.

41. Defendant affirmatively and materially represented to Bomasada during the negotiation phase of the contract that Defendant had the requisite skill and expertise to provide professional, workable, and complete plans for residential multi-family construction.

42. Defendant's representations were false in that the Plans provided are inadequate, deficient, and fail to provide the necessary information required to complete the Project, as alleged above. Defendant's employees also did not have the requisite experience in order to service the Project, and knew this at the time it signed the Contract.

43. Bomasada reasonably relied on the material representations from Defendant regarding Defendant's capabilities.

44. Bomasada's reliance was to its detriment in that it hired Defendant based on these representations, and attempted to utilize the faulty Plans provided by Defendant.

45. Defendant's misrepresentations have proximately caused harm to Bomasada by causing it to incur increased amounts of damages that would not have been incurred had

Bomasada been provided accurate plans.

46. Bomasada is entitled to recover damages as a result of Defendant's fraud.

WHEREFORE, Bomasada demands judgment against the defendant in an amount to be awarded by the trier of fact, including compensatory damages, punitive damages, interest, costs, and such other, further, or necessary relief to which Bomasada may be entitled.

## COUNT FOUR – CONTRACTUAL INDEMNITY

47. Bomasada adopts and incorporates herein by reference as if expressly set forth all the allegations and averments contained in the paragraphs above and further alleges as follows:

48. Section 9.1.3 of the Agreement states:

> The Architect shall indemnify and hold the Owner and the Owner's officers and employees harmless from and against damages, losses and judgments arising from claims by third parties, including reasonable attorneys' fees and expenses recoverable under applicable law, but only to the extent they are caused by the negligent acts or omissions of the Architect, its employees and its consultants in the performance of professional services under this Agreement.

49. The New Owner has brought claims in an arbitration proceeding based on the Maxus Design Claims.

50. The Maxus Design Claims are based entirely on, relate exclusively to, or arise exclusively out of Defendant's actions or omissions during its designing, drawing, and planning for the Project. The Maxus Design Claims are based are also based on Defendant's negligence in not even understanding what was originally designed by their own firm.

51. If Bomasada is liable to Maxus for the Maxus Design Claims as being pursued in the arbitration, it will be solely based upon Defendant's actions or omissions during the designing, drawing, and planning of the Project plans.

52. The Maxus Design Claims are caused by Defendants' negligent acts or omissions.

9

## **COUNT FIVE – CONTRIBUTION / INDEMNITY**

53. Bomasada adopts and incorporates herein by reference as if expressly set forth all the allegations and averments contained in the paragraphs above and further alleges as follows:

54. The New Owner has brought claims in an arbitration proceeding based on the Maxus Design Claims.

55. The Maxus Design Claims are based entirely on, relate exclusively to, or arise exclusively out of Defendant's actions or omissions during its designing, drawing, and planning for the Project.

56. If Bomasada is liable to Maxus for the Maxus Design Claims as being pursued in the arbitration, it will be solely based upon Defendant's actions or omissions during the designing, drawing, and planning of the Project plans.  The Maxus Design Claims are based are also based on Defendant's negligence in not even understanding what was originally designed by their own firm.

57. Bomasada did not cause or contribute to Maxus's damages with regard to the Maxus Design Claims, if any.

58. Defendant, on the other hand, is primarily responsible and directly liable for Maxus's damages with regard to the Maxus Design Claims, if any.

WHEREFORE, PREMISES CONSIDERED, Bomasada demands judgment against Defendant for any and all sums that may be awarded against Bomasada in favor of Maxus on the Maxus Design Claims, plus costs of court, interest, and any further relief to which Bomasada is entitled.

## COUNT SIX – WANTONNESS

59. Bomasada adopts and incorporates herein by reference as if expressly set forth all the allegations and averments contained in the paragraphs above and further alleges as follows:

60. Defendant owed duties to Bomasada that existed in addition to and independent of the Contract.

61. Defendant wantonly breached these duties to Bomasada.

62. As a proximate and direct consequence of Defendant's wantonness, Bomasada was caused to suffer the injuries and damages set forth above.

WHEREFORE, Bomasada demands judgment against the defendant in an amount to be awarded by the trier of fact, including compensatory damages, punitive damages, interest, costs, and such other, further, or necessary relief to which Bomasada may be entitled

s/ R. Ryan Daugherty
R. Ryan Daugherty (DAU008)
Attorney for Plaintiff Bomasada Birmingham Metropolitan, LLC

**OF COUNSEL:**
**SIROTE & PERMUTT, P.C.**
2311 Highland Avenue South
P.O. Box 55727
Birmingham AL  35255-5727
Tel:    (205) 930-5390
Fax:   (205) 212-3851

**Plaintiff's Address**:
c/o Sirote & Permutt, P.C.

**SERVE DEFENDANT VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED AT THE FOLLOWING ADDRESS:**

Lord Aeck Sargent, a Katerra company PLLC
c/o CT Corporation System – Reg. Agent
2 North Jackson Street
Suite 605
Montgomery, AL 36104