FILED
2021 May-11  PM 03:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit "5"



Jason G. Johns<br>
(713) 752-4205 (Direct Dial)<br>
(713) 308-4102 (Direct Fax)<br>
jjohns@jw.com

June 14, 2018

**By E-Mail – mcr@aaplaw.com**

Matthew C. Ryan
Allensworth & Porter, L.L.P.
100 Congress Avenue, Suite 700
Austin, Texas 78701

  Re: Bomasada[1]/Lord Aeck Sargent ("LAS").

    Contract between LAS and Bomasada Birmingham Metropolitan, LLC dated June 26, 2014.

    And

    Contract between LAS and Bomasada Cosmopolitan Tulsa, LLC dated August 26, 2014.

Dear Matt:

  I am writing to address the LAS errors and omissions situation Bomasada continues to uncover at both The Metropolitan Apartments in Birmingham, Alabama (the "Birmingham Project") and The Cosmopolitan Apartments in Tulsa, Oklahoma (the "Tulsa Project").

  Please also consider this notice of claims as required by Alabama and Oklahoma law, respectively, and/or as required by the contracts.

  Before I address the specific Projects, it is important to understand what difficulties Bomasada has generally encountered over this past two years due to the deficient LAS Architectural Plans.

  The Architectural Plans should represent all the required work (and coordinate this work with other disciplines) in sufficient detail so that the plans and other plan documents are reasonably interpretable and most importantly buildable. The contracts for both Projects generally agree with this statement, as they mandate that LAS the "Architect shall perform its

---

[1] For purposes of this letter only, "Bomasada" shall refer to Bomasada Birmingham Metropolitan, LLC when referring to the Birmingham Project, and Bomasada Cosmopolitan Tulsa, LLC when referring to the Tulsa Project. These are the legal entities that signed the two contracts with LAS, which is the subject of the disputes contained in this letter.

services consistent with the professional skill and care ordinarily provided by Architects practicing in the same or similar locality under the same or similar circumstances [herein often referred to as the "Standard of Care]."

The Standard of Care statement is important because, by engaging a design professional, the Owner can expect to receive a complete and constructible set of plans in accordance with industry standards. The Owner pays a significant amount of money for this work product and service, just as Bomasada in turn paid LAS to comply with this Standard. Bomasada expected to receive (and was entitled to receive under the contracts) biddable, buildable and a completed set of Plans and Documents so the General Contractor and all construction trades could accurately and reasonably bid and subsequently build the Projects. The accuracy and completeness of the LAS Plans and Documents would then allow the Owner to underwrite the feasibility of developing the project. As the Birmingham and Tulsa Projects have continued, it has become abundantly clear that LAS failed to deliver the contracted for work product that was to comply with the Standard of Care. Moreover, the plans and construction documents are so poor and so deficient that it is also apparent that LAS wrongly induced Bomasada to sign the contracts knowing it did not possess the requisite multi-family experience to perform in the role as a qualified Multifamily Architect. Bomasada will prove this at trial.

Bomasada's project managers and field personnel continue to spend an inordinate amount of their daily duties attempting to decipher LAS's incoherent plans. The amount of negative feedback as to the quality of Plans and Documents from the subcontractors and suppliers has been to say the least monumental.

**The Birmingham Project—A Few Specific Examples.**

- There are no stair platform landings shown on plans at level 2, elevator 1, and Phase 3 & 5 exit to garage. The cost to add stairs and platforms was $25,200.00;

- The vent well at the precast garage at phase 4 of the building did not detail the wall finish material. The cost to add hardie plank siding was $71,948.22;

- The site elevation of the project changes by 6 feet across the site, allowing the first floor of the buildings to have ceiling heights of 9 feet to a high of 15 feet in order to maintain a consistent ceiling height for the 2nd, 3rd and 4th floors. This condition required the first floor ceilings to be furred down to 11 feet which the plans did not address. The initial costs to complete to date are $ 63,761.64;

- At level 5 and 5-1/2 of the garage, there was no design shown for a required elevator vestibule to close off and protect the elevators that would then be exposed to the weather and elements. This resulted in the need to construct elevator vestibules at a cost of $ 48,280.21;

Matthew C. Ryan
June 14, 2018
Page 3

───────────────────

- The main entry drive to the garage on 29th Street did not include a ceiling fur down or finishes on the original plans. This resulted in additional costs of $18,350.00 to furr down and stucco the new lid which covered the exposed sanitary sewer, water and fire sprinkler lines under the floor trusses;

- LAS did not design or provide for a back-up generator for the fire pump on the Fire Sprinkler System, required by the City of Birmingham. This will result in costs that will exceed $ 100,000.00;

- The LAS door schedule for the project incorrectly labeled the mechanical room doors as solid doors that are required by code to be louvered. This resulted in additional cost to Bomasada of $ 35,332.70;

- After completion of framing in the mezzanine units in Phase 1, 2 and 3; it was discovered that the loft stairways did not meet minimum width code requirements. The costs to correct this error was $ 27,929.00 and a considerable delay to the construction schedule;

- The fire caulking details on the plans did not distinguish between fire caulking requirements and draft stop requirements. This was challenged by the City of Birmingham Inspection Department asking for clarification and a letter from LAS to only fire caulk penetrations through one hour assemblies and not draft stops, to which LAS refused to agree. This resulted in all fire penetrations and draft stops to be fire caulked as opposed to the industry accepted standard of tape and mud causing additional costs and delays to inspections as well as production and work progress. Costs to date are currently in excess of $ 135,000.00 demonstrating again LAS's lack of understanding the most elementary of multifamily construction techniques.

This is just a sample of the errors and omissions created by LAS that has cost Bomasada significant dollars on the Birmingham Project. Bomasada is still in the process of reviewing all the RFI's and ASI's for all costs associated with these changes, errors and omissions to the approved construction plans. This, in turn, has led to the review of all Subcontractor Change Orders on the Project to align same with the deficient LAS work product. Bomasada expects the costs to it, based on LAS's plans, to continue to escalate. The above is a mere peek behind the curtain as I will provide additional information to you as this analysis progresses.

Moreover, the costs outlined above do not even contemplate all the delays to the Project and its occupancy caused by LAS, which will easily exceed $5,000,000.00. Bomasada expects to recover these costs in litigation.

**The Tulsa Project – A Few Specific Examples.**

To date, the Tulsa Project is just completing the concrete segment of the project but already there are 95 RFIs and 29 ASIs. This is an extraordinary amount considering the early stages of construction. Bomasada is still reviewing all LAS's substantial changes to the

Matthew C. Ryan
June 14, 2018
Page 4

---

approved construction plans, which, unfortunately, will lead to subcontractor change orders. This will significantly impact the total cost of the project to Bomasada caused directly by LAS's negligence.

Generally, the deficient plans are having the following material impacts on the Project:

- The plans have missing specifications, details and consistency in layering.  We are experiencing significant delays due to the time it is taking the Project Manager and onsite Superintendent to understand the design intent and communicate this intent to field subcontractors and their suppliers. Frustration levels expressed by the subcontractor base to the deficient pans has been significant;

- The plans are without proper labeling and referencing in order to understand how to reference specific details and design intent throughout the plan set;

- The subcontractors have not been able to readily find information to competitively bid the Project, and are adding a significant upcharge to pricing because of the deficient plans;

- The MEP drawings for the Amenity area (9th level garage) did not show plumbing, electrical or mechanical requirements. The additional costs to Bomasada will exceed $33,000.00;

- The revisions (ASI#9 (2/8/18), and ASI#9R1 (4/4/18)) increased the size of the structural steel beam required and caused the submittal for review to be rejected since the design changed. A complete miss by LAS.  The total cost of redesign and construction to Bomasada is $198,169.00;

- The egress stairs from the top parking level down to level 8 are not detailed. This will cost Bomasada approximately $20,000.00;

- RFI #47 relates to a podium on a column line that was drawn as a wood frame landing.  It is a 1A structure requiring it to be concrete.  There will result in a change order from the concrete subcontractor estimated to be approximately $17,000;

- LAS failed to provide any information to complete the design of the trash chute.  The anticipated cost Bomasada is approximately $10,000.00;

- Bomasada has addressed with LAS the drainage pattern shown in the courtyard.  The LAS landscaping plan has the entire courtyard designed to drain toward the covered interior stairway to the clubhouse main entry, not to the main 2' x 2' storm drain located in the courtyard.  The estimated cost to Bomasada to correct this LAS mistake in design will be $15,000.00 to $ 20,000.00;

Matthew C. Ryan
June 14, 2018
Page 5

- The walls added to the foundation of Building B were not in the previous drawings and resulted in a change order from the subcontractors. More information on this error can be located at RFI # 95. The additional cost to Bomasada will be $35,000 to $50,000, since it will involve concrete, waterproofing, drainage and handrails.

There are also numerous examples at the Tulsa Project of LAS's failure to assist its customer in the design of the Project. One pressing issue is the over-design usage of moisture resistance drywall. This would add $108,369.00 to the drywall cost of the Project. This is a perfect example of how disconnected LAS is from the multifamily industry when it comes to construction and industry acceptable techniques.

The above are just a few samples of the errors and omissions created by LAS that has cost Bomasada significant dollars on the Tulsa Project. Bomasada is still in the process of reviewing all the RFI's and ASI's for all costs associated with these changes to the approved construction plans. This, in turn has led to a review of all Subcontractor Change Orders on the Project. Bomasada expects the costs to it based on LAS's plans to continue to escalate similar to Birmingham in excess of $5,000,000.00. I will provide additional information to you as this analysis progresses.

**Summary.**

Despite all this, LAS claims it is entitled to additional compensation under the Projects. **There is no way LAS is owed any additional money due to the damages caused by LAS.** LAS have even taken the position on the Birmingham Project that it is owed money for additional services because it has not caused Bomasada delay. This is absurd. I will refrain from going into these issues any further because it will serve no useful purpose.

If you have not already done so, please make sure LAS understands that all information related to both Projects should be subject to a litigation hold. This includes, but is not limited to, all information including payroll logs demonstrating who originally designed and worked on the Projects, and all correspondence amongst LAS relating to the Projects.

As always, you can email or call anytime and the lines of communication are always open. However, it appears we are headed towards two lawsuits unless LAS accepts responsibility for the defective plans, and stops antagonizing Bomasada with additional charges that are inequitable and incomprehensible to say the least.

Best regards,

Jason G. Johns

JGJ:akm

20930946v.1