FILED
2022 Feb-04  AM 11:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **BOMASADA BIRMINGHAM METROPOLITAN, LLC,** ) | |
| ) | |
| PLAINTIFF, ) | **CASE NO. 2:21-CV-00661-AMM** |
| ) | |
| V. ) | |
| ) | |
| **LORD AECK SARGENT, A KATERRA COMPANY PLLC;** ) | |
| ) | |
| DEFENDANT. ) | |

## FIRST AMENDED COMPLAINT

Plaintiff Bomasada Birmingham Metropolitan, LLC ("Bomasada") hereby files its First Amended Complaint against Defendant Lord Aeck Sargent, a Katerra company PLLC ("LAS, PLLC"), and, in support, states as follows:

### JURISDICTIONAL AND FACTUAL AVERMENTS

1. Plaintiff Bomasada is a Texas limited liability company doing business in Jefferson County, Alabama.

2. Defendant Lord Aeck Sargent, a Katerra company PLLC is professional limited liability company formed in the State of Washington, qualified to do business in the State of Alabama, and with its principal place of business in California.

3. In or around June 2018, Lord Aeck Sargent, Inc. ("LAS, Inc.") and Katerra "announced a partnership" whereby it was announced that Lord Aeck Sargent was "becoming a Katerra Company." The company "Lord Aeck Sargent" continued to operate under the trade name "Lord Aeck Sargent" but with the same principals and officers. (A true and correct copy of a news release reciting the "partnership" of "Lord Aeck Sargent" with the Katerra Company is attached hereto as "Exhibit A").

4. Also in June 2018, a new legal entity was qualified to do business in Alabama under the legal entity name of "Lord Aeck Sargent, a Katerra Company PLLC."

5. Since its creation, LAS, PLLC has had an interest in or otherwise acted as the functional successor-in-interest and alter ego of LAS, Inc. as to the contract executed between LAS, Inc. and Bomasada (the "Contract"), as further alleged below.

6. On June 6, 2021, Katerra Inc. and over thirty affiliated debtors, including LAS, Inc., filed Chapter 11 bankruptcy petitions in the Bankruptcy Court for the Southern District of Texas. (*In re Katerra, Inc., et al.*, Case No. 21-31861 (DRJ) (Bankr. S.D. Tex.) (Jointly Administered)).

7. On or about July 8, 2021, the principals of the company known as "Lord Aeck Sargent" repurchased the assets of "Lord Aeck Sargent" out of the

Katerra Bankruptcy and resurrected their company, now under the entity name of "Lord Aeck Sargent Planning & Design, Inc." (LAS P&D). (A true and correct copy of the LAS P&D news release is attached hereto as "Exhibit B").

8. The Term Sheet included with the motion seeking approval of the sale of Lord Aeck Sargent's assets to LAS P&D (the "Motion to Sell") identified the "Seller" in that transaction as two entities: "Lord Aeck Sargent, Inc." and "Lord Aeck Sargent, A Katerra Company, PLLC." (A true and correct copy of the Motion to Sell is attached hereto as "Exhibit C").

9. The Term Sheet further states that certain assets would not be conveyed, and therefore would be retained by the "Seller", specifically including the following: "The three contracts between Seller and affiliates of Texas developer Bomasada for apartment projects in Oklahoma City, OK; Tulsa, OK; and Birmingham, AL." (Exhibit C, at p. 21).

10. The same individual executed the Term Sheet on behalf of LAS, Inc., LAS, PLLC, and the parent entity, Katerra, Inc. (Exhibit C, at p. 25).

11. Therefore, according to the Motion to Sell filed by the bankruptcy debtors associated with the jointly administered Katerra, Inc. bankruptcy case—specifically including LAS, Inc.—LAS, PLLC has or had some interest in the Bomasada contracts.

12. An order approving the Motion to Sell was entered on July 8, 2021 (the "Sale Order"). (*Katerra, Inc., et al.*, Case No. 21-31861, at Doc. 412). (A true and correct copy of the Sale Order is attached hereto as "Exhibit D"). The Asset Purchase Agreement attached to the Sale Order makes clear that the "Sellers" are LAS, Inc. and LAS, PLLC. The Asset Purchase Agreement also indicates that the Bomasada Contract is an Excluded Asset of the Sellers.[1]

13. The real property on which the construction project involved in this case is located is in Jefferson County, Alabama, which is in this Court's division and district.

**The Contract**

14. Bomasada is a real estate entity formed to construct and operate a multi-family residential project in Birmingham, Alabama (the "Project"). The Project is located at 2900 7th Avenue South, Birmingham, Alabama.

15. Prior to filing bankruptcy, LAS, Inc. operated as an architectural and design firm. LAS, Inc. held itself out to be a top-notch, experienced design firm "providing responsive design, technological expertise and exceptional service in order to provide our clients with the best possible facilities."

---

[1] Due to the bankruptcy filing and sale, Plaintiff does not assert any claims in this case against LAS, Inc. or against the bankruptcy sale asset purchaser, Lord Aeck Sargent Planning & Design, Inc. LAS, PLLC is not a bankruptcy debtor.

16. In June of 2014, Bomasada entered into an agreement (the "Contract") with LAS, Inc. to design the Project. More specifically, the Contract was for multi-family design services.

17. Sometime thereafter, LAS, PLLC became the successor-in-interest of LAS, Inc.'s rights and obligations under the Contract or otherwise came to have some interest in the Bomasada Contract, as illustrated by the Term Sheet filed in the Katerra Bankruptcy. LAS, PLLC and LAS, Inc. are therefore hereinafter referred to collectively as "LAS."

18. The Contract also required LAS to provide pre-design and construction administration services. However, the primary work product associated with the Contract was the preparation of the architectural plans (the "Plans").

19. The Plans are essentially design drawings of every aspect of the Project and are the blueprints that allow the contractors (and all subcontractors) to construct the Project. The Plans are also the documents used by the contractor to allow it to bid out subcontracts to various trades who are entrusted with constructing certain elements of the Project.

20. LAS charged Bomasada over $750,000. Bomasada paid this amount.

21. Among other things, the Contract states that "the Architect shall perform its services consistent with the professional skill and care ordinarily

provided by architects practicing in the same or similar locality under the same or similar circumstances," and the "Architect shall perform its services as expeditiously as is consistent with such professional skill and care and the orderly progress of the Project."

22. During the course of construction of the Project, Bomasada identified numerous errors and omissions and was forced to spend additional dollars to fix LAS's mistakes. This caused Bomasada to spend additional dollars it would not have to spend if LAS's Plans had been suitable to build the Project.

**LAS Failed to Perform under the Contract.**

23. LAS's performance under the Contract was a disaster.

24. The Plans were woefully lacking in several material respects and were not drafted with the professional skill and care ordinarily provided by architects in the multi-family discipline. By way of example,

- The Plans show design elements that Bomasada specifically requested be omitted;

- The Plans failed to include many components that are necessary and common in plans for multifamily projects (such as a biddable and buildable window and door schedule);

- The Plans were missing many construction elements necessary for the subcontractors to properly bid out their subcontracts;

- The Plans show a gross lack of detailing to allow the contractor and subcontractors to build the Project. This is reflective of LAS's lack of knowledge in multifamily, wood-framed construction;

- The Plans failed to include many obvious and necessary design components so that the general contractor and subcontractors could build the Project;

- The Plans did not meet the building code requirements in several material respects; and

- The Plans were simply not adequate for the subcontractors to understand their requirements and properly build the Project.

25. These errors and omissions proximately caused Bomasada damages for which it now sues.

**LAS's Response to its Failure to Perform.**

26. LAS's responsive attitude to Bomasada's concerns about grossly inadequate Plans was shocking. Instead of taking upon itself to fix the issues, LAS took every opportunity to take advantage of the fact that its poor Plans put Bomasada in a difficult situation. By way of example, LAS repeatedly asked Bomasada for additional compensation to address its own errors and omissions. LAS even raised its billable rate to Bomasada for these additional charges. Finally, LAS charged Bomasada for "additional services" due to the fact that the

7

construction is taking longer than planned, when it was LAS's poor Plans that have caused delays.

27. LAS also charged Bomasada for construction administration costs. This construction administration was either nonexistent or lacking in oversight and/or more importantly, experience. Bomasada requested that LAS cease billing its construction administration. In response, LAS threatened to pull Bomasada's license to use the Plans if Bomasada did not continue to pay LAS's construction administration. Bomasada was forced to pay some of these expenses under protest.

28. Finally, LAS's response to Bomasada regarding the hard dollars that Bomasada has been forced to pay is that LAS's errors and omissions are to be "expected" considering the size of the Project.

**The New Owner Hires LAS.**

29. On or about August 31, 2018, Bomasada sold the Project to Maxus Metropolitan LLC (the "New Owner"). Prior to the sale, Bomasada clearly communicated to the New Owner regarding the challenges the Project suffered due to LAS's errors and omissions.

30. Late in 2019, the New Owner hired LAS to assist it with certain rebuilding efforts after a portion of the Project was destroyed due a fire, which took place in late 2018.

31. On or about April 2020, the New Owner began to raise allegations of construction defects in Phases 1-5 of the Project. Many of these issues were not defects. Other issues related solely to LAS's inadequate and faulty design (the "Maxus Design Claims").

32. Despite this, the New Owner blames Bomasada (and/or a related construction company Bomasada Birmingham Construction, LLC) for the issues that are allegedly plaguing the Project. Based on these allegations, many of which are design related, the New Owner has sued Bomasada Birmingham Construction, LLC in a currently pending arbitration proceeding.

33. LAS began to issue new "reports" to the New Owner claiming that certain issues related to construction errors when, if fact, if any areas of the Project needed to be fixed, it was based on faulty design. Shockingly, LAS appears to be convincing the New Owner to expend additional sums of money (which New Owner claims is Bomasada's fault) on issues that LAS caused (or agreed was satisfactory) in the first place. LAS's current personnel have also convinced the New Owner to spend additional dollars because they do not even know what was originally designed by their own firm.

34. This wanton and unexplainable conduct by LAS continues through the date of this Complaint, and adds to Bomasada's indemnity and/or contribution claims raised herein.

**Bomasada's Damages.**

35. LAS agreed that it would perform its services consistent with the professional skill and care ordinarily provided by architects practicing in the same or similar locality under the same or similar circumstances

36. LAS did not comply with the Contract.

37. Bomasada experienced increased cost to the Project based on, but not limited to:

- Eliminating design elements from LAS's Plans that it instructed LAS it did not want in the first place. If LAS had the requisite experience, it would know these design elements were not required;

- Changing the materials called for because they did not meet proper building codes or guidelines;

- Adding required platforms and stairs not identified in the Plans;

- Adding required exterior finish elements not identified in the Plans;

- Delays in production due to defective Plans; and

- Correcting construction that had to be re-done due to the improper call outs and dimension busts on the Plans.

38. LAS has refused to reimburse any of the expenses incurred by the Bomasada to repair the issues caused by LAS.

39. Bomasada has also incurred damages based on LAS's recent conduct with the New Owner, of which Bomasada is entitled to contractual and common law indemnity.

## COUNT ONE - BREACH OF CONTRACT

40. Bomasada adopts and incorporates herein by reference as if expressly set forth all the allegations and averments contained in the paragraphs above and further alleges as follows:

41. Under the Contract between LAS and Bomasada, LAS has a duty to perform its services consistent with the professional skill and care ordinarily provided by architects practicing in the same or similar locality under the same or similar circumstances.

42. Bomasada performed by making payments under the Contract and cooperating with LAS by providing information about the Project when requested.

43. LAS's gross negligence, incompetence, or misconduct in performing its services under the Contract has proximately caused damage to Bomasada.

44. Bomasada is entitled to recover damages as a result of LAS's breach of contract.

WHEREFORE, Bomasada demands judgment against Defendant in an amount to be awarded by the trier of fact, including compensatory damages,

interest, costs, attorney fees, and such other, further, or necessary relief to which Bomasada may be entitled.

## COUNT TWO – NEGLIGENCE

45. Bomasada adopts and incorporates herein by reference as if expressly set forth all the allegations and averments contained in the paragraphs above and further alleges as follows:

46. LAS has a duty to perform its services consistent with the professional skill and care ordinarily provided by architects practicing in the same or similar locality under the same or similar circumstances.

47. By its deficient work, and substandard construction administration services, LAS has breached its duty to Bomasada.

48. The errors and omissions committed by LAS on the Project breached LAS's duty to Bomasada.

49. The breach of duty by LAS has proximately caused harm to Bomasada by causing it to incur increased amounts of damages not contemplated by the Contract.

50. Bomasada is entitled to recover damages as a result of LAS's breach of duty.

WHEREFORE, Bomasada demands judgment against Defendant in an amount to be awarded by the trier of fact, including compensatory damages,

interest, costs, attorney fees, and such other, further, or necessary relief to which Bomasada may be entitled.

### COUNT THREE – CONTRACTUAL INDEMNITY

51.  Bomasada adopts and incorporates herein by reference as if expressly set forth all the allegations and averments contained in the paragraphs above and further alleges as follows:

52.  Section 9.1.3 of the Agreement states:

> The Architect shall indemnify and hold the Owner and the Owner's officers and employees harmless from and against damages, losses and judgments arising from claims by third parties, including reasonable attorneys' fees and expenses recoverable under applicable law, but only to the extent they are caused by the negligent acts or omissions of the Architect, its employees and its consultants in the performance of professional services under this Agreement.

53.  The New Owner has brought claims in an arbitration proceeding based on the Maxus Design Claims.

54.  The Maxus Design Claims are based entirely on, relate exclusively to, or arise exclusively out of LAS's actions or omissions during its designing, drawing, and planning for the Project. The Maxus Design Claims are based are also based on LAS's negligence in not even understanding what was originally designed by their own firm.

13

55. If Bomasada is liable to Maxus for the Maxus Design Claims as being pursued in the arbitration, it will be solely based upon LAS's actions or omissions during the designing, drawing, and planning of the Project plans.

56. The Maxus Design Claims are caused by LAS's negligent acts or omissions.

57. WHEREFORE, Bomasada demands judgment against Defendant for any and all sums that may be awarded against Bomasada in favor of Maxus on the Maxus Design Claims, plus costs of court, interest, and any further relief to which Bomasada is entitled.

## COUNT FOUR – WANTONNESS

58. Bomasada adopts and incorporates herein by reference as if expressly set forth all the allegations and averments contained in the paragraphs above and further alleges as follows:

59. LAS owed duties to Bomasada that existed in addition to and independent of the Contract.

60. LAS wantonly breached these duties to Bomasada.

61. As a proximate and direct consequence of LAS's wantonness, Bomasada was caused to suffer the injuries and damages set forth above.

WHEREFORE, Bomasada demands judgment against Defendant in an amount to be awarded by the trier of fact, including compensatory damages,

punitive damages, interest, costs, and such other, further, or necessary relief to which Bomasada may be entitled.

### **COUNT FIVE – ALTER EGO/ SUCCESSOR LIABILITY**

62. Bomasada adopts and incorporates herein by reference as if expressly set forth all the allegations and averments contained in the paragraphs above and further alleges as follows:

63. Lord Aeck Sargent, a Katerra company PLLC and Lord Aeck Sargent, Inc. may exist as separate entities under Alabama law, or the law of the state in which each was formed, but have, upon information and belief, operated under the same or substantially the same owners and directors in each iteration of their corporate identity.

64. It was through the business name "Lord Aeck Sargent" that Bomasada contracted for architectural and design services and it is under that trade name that the LAS entities continued to deal with Bomasada and New Owner.

65. The LAS entities issued news releases related to its change of entity identity, but never altered or amended its contractual relationships.

66. LAS, PLLC is a successor entity and alter ego of the originally formed LAS, Inc., and bears successor liability for the actions and omissions of LAS, Inc.

67. Complete control was exercised over all three entities by the same officers and directors, as illustrated by the "emergence" of LAS P&D from the Katerra Bankruptcy and continuation of the company in essentially the same existence.

WHEREFORE, Bomasada demands judgment against Defendant in an amount to be awarded by the trier of fact, including compensatory damages, punitive damages, interest, costs, and such other, further, or necessary relief to which Bomasada may be entitled.

s/ R. Ryan Daugherty<br>
R. Ryan Daugherty (DAU008)<br>
Attorney for Plaintiff Bomasada<br>
Birmingham Metropolitan, LLC

**OF COUNSEL:**
**DENTONS SIROTE PC**
2311 Highland Avenue South
P.O. Box 55727
Birmingham AL  35255-5727
Tel: (205) 930-5390
Fax:   (205) 212-3851
ryan.daugherty@dentons.com

**[and]**
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
Jason G. Johns (*admitted pro hac vice*)
Anastasia A. Bolshakov (*admitted pro hac vice*)
24 Greenway Plaza, Suite 2050
Houston, TX 77046
Tel: (713) 341-1153
jjohns@wkpz.com
abolshakov@wkpz.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on February 4, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF e-filing system, which will send notification of such filing to the following:

E. Britton Monroe
Bryan A. Grayson
Allison R. Bendall
LLOYD, GRAY, WHITEHEAD & MONROE, P.C.
880 Montclair Road, Suite 100
Birmingham, Alabama 35213
bmonroe@lgwmlaw.com
bgrayson@lgwmlaw.com
abendall@lgwmlaw.com

                                                /s/ R. Ryan Daugherty
                                                Of Counsel